UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:19-cv-62438-RAR

ANITA JAIRAM,
individually and on behalf of all
others similarly situated,

        Plaintiff,

v.

COLOURPOP COSMETICS, LLC,

        Defendant.
_____/

CLASS ACTION

JURY TRIAL DEMANDED

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPLICATION FOR SERVICE AWARD, ATTORNEYS' FEES AND EXPENSES, AND INCORPORATED MEMORANDUM OF LAW**

On October 1, 2019, Plaintiff Anita Jairam initiated this action against Colourpop Cosmetics, LLC ("Defendant" or "Colourpop") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), alleging that Defendant sent automated marketing text messages to Plaintiff and other individuals without having obtained the requisite prior express written consent. Colourpop denies the claims.

The parties subsequently negotiated a settlement on behalf of Plaintiff and a class of approximately 254,417 consumers who received the subject text messages from Defendant. On May 5, 2020, the Court granted Preliminary Approval to the Settlement, directed that notice be provided to the Settlement Class, and established a deadline for the filing of a Motion for Final Approval. [DE 50]. Pursuant to the Court's Order, the Parties proceeded to provide notice to the class through the class administrator.

Plaintiff and Class Counsel now request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Rule 23(b)(3) and Rule 23(e) of the Federal Rules of Civil Procedure; (3) appoint Plaintiff as Class Representative; (4) appoint Ignacio J. Hiraldo of IJH Law and Manuel S. Hiraldo of Hiraldo P.A. as Class Counsel;

(5) approve the Plaintiff's requested Service Award; (6) award Class Counsel the requested attorneys' fees; and (7) enter Final Judgment dismissing the Action with prejudice.

## I. INTRODUCTION

On October 1, 2019, Plaintiff filed a Class Action Complaint (the "Complaint") on behalf of herself and a putative class, styled *Jairam v. Colourpop Cosmetics, LLC,* Case No. 0:19-cv-62438-RAR (S.D. Fla. 2019) (the "Action"), which asserted claims under the TCPA against Defendant, including that she and members of the class received multiple automated marketing text messages, and sought statutory damages, declaratory relief, and injunctive relief. [DE 1].

On February 20, 2020, with the assistance of mediator Ted E. Bandstra, Esq. of JAMS, Counsel for the Parties met in person in Miami, Florida and engaged in intensive mediation and arm's length negotiations in an attempt to resolve the Action and all of Plaintiff's claims. After mediation, the Parties continued to engage in arm's-length negotiations over multiple weeks to resolve the Action with a view toward achieving substantial benefits for the Settlement Class as a whole, while avoiding the cost, delay, and uncertainty of further litigation, trial, and possible appellate practice. The Parties' ultimately reached an agreement to resolve the Action and later signed a formal Settlement Agreement. *See* Settlement Agreement and Release ("Agreement" or "Settlement") attached as **Exhibit A**.[1]

## II. MOTION FOR FINAL APPROVAL

### A. Summary of the Settlement Terms

The Settlement terms are detailed in the Agreement attached as **Exhibit A**. The following is a summary of its material terms.

#### 1. *The Settlement Class*

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Settlement Class is defined as:

> **(1) All persons within the United States (2) who were sent a text message; (3) by or on behalf of Defendant; (4) on their mobile telephone; (5) from October 1, 2015 through the date of final approval; (6) using the text messaging platform operated by Stodge, LLC d/b/a Postscript.**

Agreement at pg. 10, Section I(GG).

Excluded from the Settlement Class are: (1) the trial judge and magistrate judge presiding

---

[1] All capitalized terms used herein have the same meanings as those defined in the Agreement.

1

over this case; (2) Colourpop, as well as any parent, subsidiary, affiliate, or control person of Colourpop, and the officers, directors, agents, members, managers, servants, or employees of Colourpop; (3) any of the Released Parties; (4) the immediate family of any such person(s); and (5) Plaintiff's Counsel, their employees, and their immediate family. *Id.*

### 2.     *Monetary Relief*

The Settlement requires Defendant to make available up to Two Million Eight Hundred Sixty Two Thousand One Hundred Ninety One Dollars and Twenty Five Cents ($2,862,191.25) for the benefit of the Settlement Class. Agreement at pg. 13, Section II(B)(1). In order to receive a portion of the Settlement Fund, Settlement Class members must complete an online or paper Claim Form by October 5, 2020. *Id.*

Each Settlement Class member who timely files with the Settlement Administrator a valid Claim Form shall receive a cash distribution payable by check of Eleven Dollars and Twenty Five Cents ($11.25). Agreement at pg. 13, Section II(B)(1). Settlement Class Claimants will be sent their Claim Settlement Payments to the address they submitted on their Claim Form on February 1, 2021, provided this date is after the Effective Date.[2] If the event the Effective Date is after February 1, 2021, the Administrator shall pay any Claim Settlement Payments to Settlement Class Members who submit timely and valid Claim Forms within sixty (60) days of the post-February 1, 2021 Effective Date.[3]

In exchange for the benefits conferred by the Settlement, all Settlement Class Members and possible members of the class will be deemed to have released Defendant from claims related to the subject matter of the Action. The detailed release language is found in Section V of the Agreement. Agreement at pgs. 28-29, Section V.

### 3.     *Notice*

The Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the information Defendant had available about Settlement Class members. The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's Attorneys' Fee

---

[2] "Effective Date" means the day on which the Court enters the Final Approval Order without material change. Agreement at pg. 7, Section I(Q).

[3] This latter date is applicable only in the event the Court has not granted this Motion by February 1, 2021.

application and request for Service Award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. *See* Declaration of Manuel Hiraldo attached as **Exhibit B**, at ¶ 2.

In fact, the Notice Program went above and beyond what is required under the Parties' Settlement Agreement. Specifically, though not required by the Settlement Agreement, with the assistance of the class administrator, the Parties decided to perform *two* reverse lookup searches using available phone numbers of potential class members, in order to locate physical addresses for those class members who were not linked to a valid email address (which is the main form of notice contemplated by the Settlement Agreement). *See* Declaration of Jacob Hack ("Jack Decl."), [DE 52], at ¶7.

The Notices and Notice Program constituted sufficient notice to all persons entitled to notice, and satisfied all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

### 4. *Incentive Award*

Pursuant to the Settlement Agreement, Class Counsel are permitted to request an Incentive Award of $5,000 for the Class Representative. Agreement at pg. 14, Section II(D)(1). If approved by this Court, the Service Award will be paid from the Settlement Fund. *Id.* The Service Award will compensate the Class Representative for her time and effort in the Action, and for the risks she undertook in prosecuting the Action against Defendant.

### 5. *Attorneys' Fees and Costs*

Pursuant to the Settlement Agreement, Class Counsel are entitled to request attorneys' fees, litigation costs, and expenses of up to Seven Hundred Ten Thousand Dollars and No Cents ($710,000.00), which is approximately 24.8% of the Settlement Fund. Agreement at pg. 15, Section II(D)(2). The Parties negotiated and reached agreement regarding fees and costs only after agreeing on all other material terms of the Settlement. Hiraldo Decl. ¶ 3.

### B. **Argument**

Court approval is required for the settlement of a class action. Fed. R. Civ. P. 23(e). The federal courts have long recognized a strong policy and presumption in favor of class settlements. The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). In evaluating a proposed class settlement, the

Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 28, 2006). Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources. Therefore, "federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). The Settlement here is more than sufficient under Rule 23(e) and Final Approval is clearly warranted.

> **1.    *Notice was the Best Practicable and was Reasonably Calculated to Inform the Settlement Class of its Rights.***

The Notice Program consisted of four different components: (1) E-Mail Notice; (2) Postcard Notice for class members for which there was no email address available; (3); a Settlement Website; and (4) a toll-free number. *See* Jack Decl., [DE 52] at ¶¶6-11. Each facet of the Notice Program was timely and properly accomplished. On June 15, 2020, the Notice Administrator sent email or postcard notice to the Settlement Class Members. *Id*. at ¶¶8-9.

By June 12, 2020, the Notice Administrator also established the Settlement Website: www.JairamTCPAClassAction.com. *Id.* at ¶10. In order to enable Settlement Class members to obtain detailed information about the Action and the Settlement, the website contains—and will continue to contain—the key pleadings from this matter, a list of Frequently Asked Questions and Answers, the Long Form Notice, contact information for the Settlement Administrator, the claim form (which can also be submitted online), and key deadlines. *Id*. In addition, a toll-free number was established. *Id*. at ¶11. By calling the number, Settlement Class members could learn more about the settlement in the form of frequently asked questions and answers and to request to have a Detailed Notice and Claim Form mailed directly to them. *Id*.

The Court-approved Notice and Notice Program satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig*., 552 F.2d at 1104-05. The Notice, among other things, defined the Settlement Class, described the release provided to Defendant under the Settlement, as well as the amount and proposed distribution of the Settlement proceeds, and informed Settlement Class members of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing.

The Notice also notified Settlement Class members that a final judgment would bind them unless they opted-out and told them where they could get more information – for example, at the Settlement Website that has a copy of the Agreement, as well as other important documents. Further, the Notice described Class Counsel's intention to seek attorneys' fees and expenses of up to 25% of the Settlement Fund, and a Service Award for the Class Representative. Hence, Settlement Class members were provided with the best practicable notice that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15).

As of the time of this filing, the Settlement Administrator had received **no requests for exclusion** and **no objections** to the Settlement had been filed. *See* Jack Decl., [DE 52] at ¶¶16-17. The opt-out and objection period ends on August 24, 2020, the day of this filing. *Id.*

### 2. The Settlement Should Be Approved as Fair, Adequate and Reasonable.

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)). Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness and adequacy of a class settlement under Rule 23(e):

(1) the existence of fraud or collusion behind the settlement;
(2) the complexity, expense, and likely duration of the litigation;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the probability of the plaintiffs' success on the merits;

5

    (5) the range of possible recovery; and
    (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986.  The analysis of these factors set forth below shows this Settlement to be eminently fair, adequate and reasonable.

### a. There was no Fraud or Collusion.

The contested nature of the proceedings in this Action demonstrates the absence of fraud or collusion behind the Settlement.  *See, e.g.*, *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial, featuring a high level of contention between the parties").

Plaintiff and the Settlement Class were represented by experienced counsel throughout the negotiations. Hiraldo Decl. ¶4.  Class Counsel and Defendant engaged in formal in-person mediation with mediator Ted Bandstra, Esq of JAMS.  *Id*.  All negotiations were arm's-length and extensive.  *Id.*; *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

### b. The Settlement Will Avert Years of Complex and Expensive Litigation.

The claims and defenses are complex; recovery by any means other than settlement would require additional years of litigation. *See United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial.").

In contrast, the Settlement provides immediate and substantial monetary benefits to the Settlement Class. As stated in *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

*Id*. at 560 (alterations in original). Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v.*

6

*Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no doubt about the adequacy of the present Settlement, which provides reasonable benefits to the Settlement Class.

### c. The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

The Settlement was reached only after a thorough analysis of Plaintiff's and the Class Members' claims and engaged in extensive formal discovery with Defendant and non-parties. Hiraldo Decl. at ¶5. As a result, Class Counsel were well-positioned to confidently evaluate the strengths and weaknesses of the claims and prospects for success at trial and on appeal. *Id*. at ¶6-9.

### d. Plaintiff and the Class Still Faced Significant Obstacles to Prevailing.

The "likelihood and extent of any recovery from the defendants absent . . . settlement" is another important factor in assessing the reasonableness of a settlement. *Domestic Air*, 148 F.R.D. at 314. Class Counsel believe that Plaintiff has a strong case against Defendant. Hiraldo Decl. at ¶7. Even so, Class Counsel are mindful that Defendant advanced significant defenses, including defenses to class certification, that would have been required to overcome in the absence of the Settlement. *Id*. This Action involved several major litigation risks that loomed in the absence of settlement including, but not limited to, class certification, a motion for summary judgment, *Daubert* motions, trial, as well as appellate review following a final judgment. *Id*.

Apart from the risks, continued litigation would have involved substantial delay and expense, which further counsels in favor of Final Approval. Hiraldo Decl. at ¶8. Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement represents a fair compromise. *See, e.g.*, *Haynes v. Shoney's*, No. 89-30093-RV, 1993 U.S. Dist. LEXIS 749, at *16-17 (N.D. Fla. Jan. 25, 1993) ("The risks for all parties should this case go to trial would be substantial. …. It is possible that trial on the merits

would result in … no relief for the class members. … Based on … the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement … is a fair and reasonable compromise.").

### e. The Benefits Provided by the Settlement Are Fair, Adequate and Reasonable Compared to the Range of Possible Recovery.

In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id*.

Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, as well as the appropriate basis upon which to settle them. Hiraldo Decl. at ¶9. Each Settlement Class Claimant who opts to participate in the settlement will receive eleven dollars and twenty-five cents ($11.25). Agreement at pg. 13, Section II(B)(1). Settlement Class Members can continue to submit Claim Forms through **October 5, 2020**. [DE 50] at pg. 12.

This Settlement provides an extremely fair and reasonable recovery to Settlement Class members when considering Defendant's defenses, Defendant's financial condition due to challenges caused to Defendant's business by the pandemic, as well as the challenging, unpredictable path of litigation that Plaintiff would otherwise have continued to face in the trial and appellate courts. Hiraldo Decl. at ¶10. *See Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) (approving settlement of $13.75 per class member.); *Wilkins v. HSBC Bank Nevada, N.A.*, 2015 U.S. Dist. LEXIS 23869, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) (approving settlement of $2.95 per class member).

### f. The Opinions of Class Counsel, the Plaintiff, and Absent Settlement Class Members Favor Approval.

Class Counsel strongly endorse the Settlement. Hiraldo Decl. at ¶11. The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren*, 693 F. Supp. at 1060; *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud,

8

collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).

There has been no opposition to the Settlement, and zero objections or exclusion requests have been filed to date. Hiraldo Decl. at ¶12. This is another indication that the Settlement Class is satisfied with the Settlement.

### 3.  *The Court Should Certify the Settlement Class.*

Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the class members predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy. For the purpose of considering a settlement, all of the factors are satisfied.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of over 254,417 individuals, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). Here, the commonality requirement is readily satisfied. There are multiple questions of law and fact that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3)'s typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). Plaintiff is typical of absent Settlement Class members because she received a violative communication from Defendant, suffered the same injuries as them, and because they will all benefit from the relief achieved.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Plaintiff readily satisfies Rule 23(b)(3)'s predominance factor because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. The necessity for the court to deal with any individual issues in the litigation context is also attenuated in the settlement context. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3).

For these reasons, the Court should certify the Settlement Class.

**III.   APPLICATION FOR SERVICE AWARD**

Pursuant to the Settlement, Class Counsel respectfully request, and Defendant does not oppose, a Service Award for the Class Representative in the amount of five thousand dollars ($5,000.00). Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006). "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010).

The relevant factors include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *See, e.g.*, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). These factors, as applied to this Action, demonstrate the reasonableness of the requested Service Award to Plaintiff. Plaintiff provided assistance that enabled Class Counsel to successfully prosecute the Action including submitting to interviews with Class Counsel, attending mediation, and reviewing all material filings, including approving the Agreement. Hiraldo Decl. at ¶13.

The Service Award of $5,000 is a negligible fraction of the Settlement Fund, and well below the range of what has been deemed to be reasonable. *See, e.g.*, *Enter. Energy Corp. v. Columbia Gas Transmission*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (approving service awards totaling $300,000, or 0.56% of a $56.6 million settlement).

Class Counsel respectfully submits that the Service Award requested here is reasonable.

**IV.   APPLICATION FOR ATTORNEYS' FEES AND EXPENSES**

Pursuant to the Agreement and the Notices, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an award of attorneys' fees equal to seven hundred and ten thousand dollars ($710,000.00), which is approximately 24.8% of the Settlement Fund. Hiraldo Decl. at ¶14. Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. *Id.* at ¶3. The requested fee is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). For the reasons detailed herein, Class Counsel submit that the requested fee is appropriate, fair and reasonable and respectfully requests that it be approved by the Court.

11

### A. The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts.

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989) (citation omitted). The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant. *Van Gemert*, 444 U.S. at 478. As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." *Sunbeam*, 176 F. Supp. 2d at 1333. The common benefit doctrine is applied the same way to claims made settlements. *See Poertner v. Gillette Co.*, 618 F. App'x 624, 628 n.2 (11th Cir. 2015) ("properly understood a claims-made settlement is . . . the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant; indeed, the two types of settlements are fully synonymous.") (internal citations omitted).

In the Eleventh Circuit, class counsel is awarded a percentage of the funds made available through a settlement. *See Hanley v. Tampa Bay Sports & Entm't Ltd. Liab. Co.*, No. 8:19-CV-00550-CEH-CPT, 2020 U.S. Dist. LEXIS 89175, at *15 (M.D. Fla. Apr. 23, 2020) (noting that the percentage of the fund analysis applies to claims made settlements and that the "percentage applies to the total fund created, even where the actual payout following the claims process is lower."); *Marty v. Anheuser-Busch Cos., LLC*, No. 13-cv-23656-JJO, 2015 U.S. Dist. LEXIS 144290, at *5 (S.D. Fla. Oct. 22, 2015) (same). In *Camden I* – the controlling authority regarding attorneys' fees– the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774; *see also Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749-CIV-COHN/SELTZER, 2014 U.S. Dist. LEXIS 154762, at *20 (S.D. Fla. Oct. 24, 2014) (Attorneys representing a class action are entitled to an attorneys' fee based solely upon the

total benefits obtained in or provided by a class settlement); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 695 (S.D. Fla. 2014) (noting that in a claims made situation, the attorneys' fees in a class action are determined based upon the total fund, not just the actual payout to the class); *Carter v. Forjas*, 701 F. App'x 759, 766-67 (11th Cir. 2017) (same).

The Court has discretion in determining the appropriate fee percentage. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774).

The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as an attorney's fee to class counsel in class actions:

> (1) the time and labor required;
> (2) the novelty and difficulty of the relevant questions;
> (3) the skill required to properly carry out the legal services;
> (4) the preclusion of other employment by the attorney as a result of his acceptance of the case;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the clients or the circumstances;
> (8) the results obtained, including the amount recovered for the Clients;
> (9) the experience, reputation, and ability of the attorneys;
> (10) the "undesirability" of the case;
> (11) the nature and the length of the professional relationship with the clients; and
> (12) fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

These 12 factors are guidelines and are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). The Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775. As applied, the *Camden I* factors support the requested fee.

### 1. The Claims Against Defendant Required Substantial Time and Labor.

Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable. Hiraldo Decl. at ¶15. Class Counsel devoted substantial time to investigating the claims against Defendant. *Id.* Class Counsel also expended resources researching and developing the legal claims at issue. *Id.* Time and resources were also dedicated to conducting formal discovery, including non-party discovery. *Id.*

Settlement negotiations consumed further time and resources. Hiraldo Decl. at ¶16. The initial mediation session required substantial preparation and document review. *Id.* Finally, significant time was devoted to negotiating and drafting of the Agreement and the preliminary approval process, and to all actions required thereafter pursuant to the preliminary approval order. *Id.* All of this work consumed a substantial amount of time. *Id.*

All told, Class Counsel's coordinated work paid dividends for the Settlement Class. Each of the above-described efforts was essential to achieving the Settlement before the Court. Hiraldo Decl. at ¶18. The time and resources devoted to this Action readily justify the requested fee.

### 2. The Issues Involved Were Novel and Difficult, and Required the Skill of Highly Talented Attorneys.

"[P]rosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). This Court witnessed the quality of our legal work, which conferred a substantial benefit on the Settlement Class in the face of significant litigation obstacles. Our work required the acquisition and analysis of a significant amount of factual and legal information.

In any given case, the skill of legal counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel. Litigation of this Action required counsel trained in class action law and procedure as well as the specialized issues presented here, such as analyzing class certification and constitutional issues. Hiraldo Decl. at ¶19. Class Counsel possess these attributes, and their participation added value to the representation of this Settlement Class. *Id*.

In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. *See Camden I*, 946 F.2d at 772 n.3; *Ressler*, 149 F.R.D. at 654. Throughout the litigation, Defendant was represented by extremely capable counsel. They were worthy, highly competent adversaries who were well versed in class action litigation and TCPA specific litigation.

14

Hiraldo Decl. at ¶20; *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (stating that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results").

### 3. *Class Counsel Achieved a Successful Result.*

Given the significant litigation risks Class Counsel faced, the Settlement represents a successful result. Rather than facing years of costly and uncertain litigation against a Defendant facing financial difficulties, each Settlement Class Member is entitled to claim a cash benefit now. Hiraldo Decl. at ¶21.

### 4. *The Claims Presented Serious Risk.*

The Settlement is particularly noteworthy given the combined litigation risks. Hiraldo Decl. at ¶ 22. Consideration of the "litigation risks" factor under *Camden I* "recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk. Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.'" *Sunbeam*, 176 F. Supp. 2d at 1336. Further, "[t]he point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them." *Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988).

Prosecuting the Action was risky from the outset. Hiraldo Decl. at ¶23. Defendant was confident in their opposition to Plaintiff's claims. The Settlement Fund obtained through the Settlement is substantial, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of Settlement. Any of these risks could easily have impeded, if not altogether derailed, Plaintiff's and the Settlement Class's successful prosecution of these claims.

The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiff and Settlement Class Members through continued litigation could only have been achieved if: (i) Plaintiff was able to certify a class and establish liability and damages at trial; and (ii) the final judgment was affirmed on appeal. The Settlement is an extremely fair and reasonable recovery for the Settlement Class in light of Defendant's defenses, and the challenging and unpredictable path of litigation Plaintiff and the certified class would have faced absent the Settlement. Hiraldo Decl. at ¶24.

### 5. *Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis.*

In undertaking to prosecute this case on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. Hiraldo Decl. at ¶25. That risk warrants an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548).

Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee. Hiraldo Decl. at ¶26. The progress of the Action to date shows the inherent risk faced by Class Counsel in accepting and prosecuting the Action on a contingency fee basis. Despite Class Counsel's effort in litigating this Action, Class Counsel remain completely uncompensated for the time invested in the Action, in addition to the expenses we advanced. Hiraldo Decl. at ¶27. There can be no dispute that this case entailed substantial risk of nonpayment for Class Counsel.

### 6. *The Requested Fee Comports with Fees Awarded in Similar Cases.*

Counsel's requested fee of $710,000.00, which is approximately 24.8% of the Settlement Fund, is well within the range of fees typically awarded in similar cases. Numerous decisions within and outside of the Southern District of Florida and the Eleventh Circuit have found that a 33.33% fee is well within the range of reason under the factors listed by the *Camden I*. *See Legg v. Laboratory Corp. of America*, 14-cv-61543-RLR, Dkt. 227, p.7 (S.D. Fla. Feb. 18, 2016) (FACTA case awarding one-third of gross recovery for attorneys' fees, plus expenses); *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, at *27 (S.D. Fla. Nov. 5, 2015) (finding that a request for 30% of a $20 million dollar fund is justified); *Wolff v. Cash 4 Titles*, No. 03-22778- CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees awards).

Class Counsel's fee request falls within the range of the private marketplace, where contingency fee arrangements often approach or equal forty percent of any recovery. *See Continental*, 962 F.2d at 572 ("The object in awarding a reasonable attorneys' fee . . . is to simulate the market."); *RJR Nabisco, Inc. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) ¶ 94, 268 (S.D.N.Y. 1992)

("[W]hat should govern [fee] awards is . . . what the market pays in similar cases"). And, "[i]n tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." *Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring).

Finally, Class Counsel's fee request also falls within the range of awards in TCPA cases within this Circuit and elsewhere. *See Gottlieb v. Citgo Petroleum Corp.*, No. 9:16-cv-81911, 2017 U.S. Dist. LEXIS 197382, at *7 (S.D. Fla. Nov. 29, 2017) (granting fees and costs amounting to one-third of the $8,000,000.00 settlement fund); *ABC Bartending School of Miami, Inc., v. American Chemicals & Equipment, Inc.*, No. 15-CV-23142-KMV (S.D. Fla. April 11, 2017) (granting fees and costs amounting to one-third of the $1,550,000.00 settlement fund); *Guarisma v. ADCAHB Med. Coverages, Inc.*, Case No. 1:13-cv-21016 (S.D. Fla. June 24, 2015) (granting fees and costs amounting to one-third of the $4,500,000.00 settlement fund).

Consequently, the attorneys' fee requested here, which is well below the cases cited about, is appropriate and should be awarded.

## V.     CONCLUSION

Plaintiff and Class Counsel respectfully request that this Court: (1) grant Final Approval to the Settlement and enter the proposed order attached as **Exhibit C**; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoint Plaintiff as Class Representative; (4) appoint as Class Counsel Ignacio J. Hiraldo of IJH Law and Manuel S. Hiraldo of Hiraldo PA; (5) approve the requested Service Award in the amount of five thousand dollars ($5,000); (6) award Class Counsel attorneys' fees in the amount of seven hundred and ten thousand dollars ($710,000.00); and (7) enter Final Judgment dismissing the Action with prejudice. Counsel for Defendant has no opposition to this motion.

Dated: August 24, 2020

*/s/ Manuel S. Hiraldo*
**HIRALDO P.A.**
Manuel S. Hiraldo
Florida Bar No. 030380
Email: mhiraldo@hiraldolaw.com
401 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, Florida 33301
Telephone: 954-400-4713

**IJH LAW**
Ignacio J. Hiraldo
Florida Bar No. 0056031
1200 Brickell Ave Suite 1950
Miami, FL 33131
Email: ijhiraldo@ijhlaw.com
Telephone: 786-496-4469