## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 19-CV-62438-RAR

**ANITA JAIRAM**, individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

**COLOURPOP COSMETICS, LLC**,

      Defendant.

_____/

### ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT, DENYING APPROVAL OF SERVICE AWARD, AND GRANTING APPLICATION FOR ATTORNEYS' FEES AND FINAL JUDGMENT

On August 24, 2020, Plaintiff and Class Counsel filed their Unopposed Motion for Final

Approval of Class Settlement And Application For Service Award, Attorneys' Fees And Expenses,

And Incorporated Memorandum Of Law ("Motion"), which sought Final Approval of the

Settlement Agreement and Release ("Settlement Agreement" or "Agreement") with Defendant

Colourpop Cosmetics, LLC ("Defendant").[1]  [ECF No. 53].  In support, Plaintiff filed the

declaration of Manuel Hiraldo, one of the attorneys designated as Class Counsel for Plaintiff, to

enable the Court to evaluate the fairness and adequacy of the Settlement. [ECF No. 53-2].

Furthermore, the matter came before the Court on September 21, 2020 at 9:30 A.M., for a duly

noticed Final Approval Hearing pursuant to the Court's Order Preliminarily Approving Class

Action Settlement and Certifying the Settlement Class dated May 5, 2020 [ECF No. 50].  At the

hearing, the Court reviewed filings related to the Settlement and heard from counsel for the parties.

---

[1]  This Order incorporates the definitions of terms used in the Settlement Agreement attached to the Motion.
[ECF No. 53-1].

After careful consideration of the presentations made by the parties, the Court concludes that this Settlement provides a fair, reasonable, and adequate recovery for the Settlement Class based on the creation of a $2,862,191.25 Settlement Fund.  The Settlement constitutes an excellent result for the Settlement Class under the circumstances and challenges presented by the lawsuit. The Court specifically finds that the Settlement is fair, reasonable, and adequate, and a satisfactory compromise of the Settlement Class Members' claims.  The Settlement fully complies with Fed. R. Civ. P. 23(e), and, thus, the Court grants Final Approval of the Settlement Agreement, certifies the Settlement Class, and awards the fees and costs requested by Class Counsel.  However, in light of recent binding circuit precedent, the Court denies the requested Service Award for the Plaintiff. *See Johnson v. NPAS Solutions, LLC*, No. 18-12344, 2020 WL 5553312 (11th Cir. Sept. 17, 2020).

## BACKGROUND

The Court is familiar with the history of this lawsuit, having presided over it for one year. During that time, the Court has had the opportunity to observe Class Counsel and Defendant's counsel.  These attorneys are skilled advocates, and vigorously litigated this action up to the time of the Settlement.  The Court finds that the Settlement is the result of arm's-length negotiations.

The present evidentiary record is more than adequate for the Court to consider the fairness, reasonableness, and adequacy of the Settlement.  A fundamental question at this stage of a proceeding is whether the Court has sufficient facts before it to evaluate and intelligently and knowledgeably approve or disapprove the settlement.  *See In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084 n.6 (6th Cir. 1984) (citation omitted).  In this case, the Court has such facts before it in considering the Motion, including the evidence and opinions of Class Counsel and Class Counsel's declaration.

### 1.  Factual and Procedural Background

On October 1, 2019, Plaintiff initiated this action against Defendant for violations of the

Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., ("TCPA"), alleging that Defendant sent automated marketing text messages to Plaintiff and other individuals without having obtained the requisite prior express written consent.  [ECF No. 1].  Defendant denied the claims.  [ECF No. 15].

The parties engaged in formal discovery, including non-party discovery.  Mot. at 8.  After engaging in extensive discovery and conducting a thorough analysis of Plaintiff's and the Class Members' claims, the parties began engaging in settlement discussions.  *Id.*  On February 20, 2020, with the assistance of mediator Ted E. Bandstra, Esq. of JAMS, Counsel for the parties met in person in Miami, Florida and engaged in intensive mediation and arm's length negotiations in an attempt to resolve this action and all of Plaintiff's claims.  *Id.* at 2.  After mediation, the parties continued to engage in arm's-length negotiations over multiple weeks to resolve the action with a view toward achieving substantial benefits for the Settlement Class as a whole, while avoiding the cost, delay, and uncertainty of further litigation, trial, and possible appellate practice.  *Id.*  The parties ultimately reached an agreement to resolve the action and later signed a formal Settlement Agreement.  [ECF No. 53-1].

The Court granted preliminary approval of the Settlement on May 5, 2020.  [ECF No. 50].  After preliminary approval was granted, the Administrator sent out E-Mail, Long-Form, and Publication Notice as set forth in the Settlement Agreement.  After receiving notice, none of the Settlement Class Members opted out of the Settlement or objected to it.  As discussed below, the Court finds that Class Notice was properly effectuated, and that it was more than adequate to put the Settlement Class Members on notice of the terms of the Settlement Agreement, the procedures for objecting to and opting out of the Settlement, and the rights that the Settlement Class Members would give up by remaining part of the Settlement.

### 2. Summary of the Settlement Terms

The Settlement's terms are set forth in the Settlement Agreement ("Agreement").  [ECF No. 53-1].  The Court now provides a summary of the material terms.

### A. The Settlement Class

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure.  The Settlement Class is defined as:

> (1) All persons within the United States (2) who were sent a text message; (3) by or on behalf of Defendant; (4) on their mobile telephone; (5) from October 1, 2015 through the date of final approval; (6) using the text messaging platform operated by Stodge, LLC d/b/a Postscript.

Agreement at 10-11, Section I(GG).

### B. Monetary Relief for the Benefit of the Class

The Settlement Agreement requires the Defendant to make available up to $2,862,191.25 for the benefit of the Settlement Class.  *Id.* at 13, Section II(B)(1).  In order to receive a portion of the Settlement Fund, Settlement Class members must complete an online or paper Claim Form by October 5, 2020.  *Id.*  Each Settlement Class member who timely files with the Administrator a valid Claim Form shall receive a cash distribution of $11.25, payable by check.  *Id.*  On February 1, 2021, the Administrator will send, by first-class mail to the address listed on each Claim Form, a Claim Settlement Check to each Settlement Class Member who submits a timely, valid, correct, and verified Claim Form.  *Id.*

### C. Class Release

In exchange for the benefits conferred by the Settlement, all Settlement Class Members and possible members of the class will be deemed to have released Defendant from claims relating to the subject matter of this action.  Agreement at 28-29, Section V.

### D. The Class Notice

The notice program provided notice to the Settlement Class using four different methods:

(1) E-Mail Notice; (2) Postcard Notice for class members for which there was no email address available; (3) a Settlement Website; and (4) a toll-free number. Mot. at 5-6. The notice program is designed to provide the Settlement Class with important information about this action and the Settlement, including key pleadings from this matter, a list of Frequently Asked Questions and Answers, the Long-Form Notice, contact information for the Administrator, the claim form (which can also be submitted online), and key deadlines. *Id.* In addition, by calling the toll-free number, Settlement Class members could learn more about the settlement in the form of frequently asked questions and answers and request to have a Detailed Notice and Claim Form mailed directly to them. *Id.*

### E.  Service Award

Pursuant to the Settlement Agreement, Class Counsel are permitted to request a Service Award of $5,000 for the Class Representative. Agreement at 14, Section II(D)(1). The Service Award would be paid from the Settlement Fund. *Id.* In their Motion, Class Counsel seek approval of a Service Award to compensate the Class Representative for her time and effort in this action. Mot. at 4. As explained *infra*, the Court denies approval of the requested Service Award in light of the Eleventh Circuit's recent decision finding that "incentive" or "service" awards to lead plaintiffs in Rule 23 class actions are unlawful. *Johnson*, 2020 WL 5553312, at *9 (finding a class representative can be reimbursed for attorneys' fees and expenses incurred in the litigation, but the representative cannot be paid a salary or be reimbursed for personal expenses).

### F.  Attorneys' Fees and Costs

The Agreement allows Class Counsel to request attorneys' fees, litigation costs, and expenses of up to $710,000.00, which is approximately 24.8% of the Settlement Fund. Agreement at 15, Section II(D)(2). The parties negotiated and reached agreement regarding fees and costs only after agreeing on all other material terms of the Settlement. Mot. at 4.

## ANALYSIS

Federal courts have long recognized a strong policy and presumption in favor of class action settlements. The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. Unit B 1982). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977). In evaluating a proposed class action settlement, "the district court may rely upon the judgment of experienced counsel for the parties." *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012). "Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel." *Id.* (quotations and citation omitted).

As explained below, the Settlement Agreement here is more than sufficient under Rule 23(e). The Agreement was negotiated at arm's length by experienced counsel who were fully informed of the facts and circumstances of this litigation and of the strengths and weaknesses of their respective positions. The Settlement Agreement was reached after the parties had engaged in mediation and extensive settlement discussions and after the exchange of information, including information about the size and scope of the Settlement Class. Counsel for the parties were therefore well-positioned to evaluate the benefits of the Agreement, taking into account the expense, risk, and uncertainty of protracted litigation.

**1. The Court's Exercise of Jurisdiction is Proper.**

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332(d)(2). Further, the Court has personal jurisdiction over the Plaintiff, venue is proper, and the Court has subject matter jurisdiction to approve the Agreement, including all exhibits

thereto, and to enter this Final Approval Order.  Without in any way affecting the finality of this Final Approval Order, this Court hereby retains jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the Agreement and of this Final Approval Order, and for any other necessary purpose.

In addition to having personal jurisdiction over the Plaintiff, the Court also has personal jurisdiction over all Settlement Class Members because they received the requisite notice and due process.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)).

### a.   The Best Notice Practicable Was Provided to the Settlement Class.

As discussed above, notice of the Settlement in the form approved by the Court was mailed to all Settlement Class Members.  Each facet of the four component Class Notice program was timely and properly accomplished.  Mot. at 5-6.  On June 15, 2020, the Administrator sent email or postcard notice to the Settlement Class Members.  *Id.*  By June 12, 2020, the Administrator also established the Settlement Website: www.JairamTCPAClassAction.com.  *Id.*  Hence, the Settlement Class members were provided with the best practicable notice under the circumstances.

### b.   The Class Notice was Reasonably Calculated to Inform Class Members of Their Rights.

The Court-approved Class Notice satisfied due process requirements because it described "the substantive claims...[and] contained information reasonably necessary to make a decision to remain a class member and be bound by the final judgment."  *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1104-05.  The Class Notice, among other things, notified Settlement Class members that a final judgment would bind them unless they opted-out and told them where they could get more information – for example, at the Settlement Website that has a copy of the Agreement, as well as other important documents.  Further, the Class Notice described Class

Counsel's intention to seek attorneys' fees and expenses of up to 25% of the Settlement Fund, and a Service Award for the Class Representative.

Accordingly, the Court finds that the Settlement Class Members were provided with the best practicable notice, and that notice was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15). The Settlement Agreement was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so. Despite that opportunity, there were no objections or opt outs to the Settlement, which speaks favorably of its terms.

### 2. The Settlement is Fair, Adequate, and Reasonable and Therefore Final Approval is Appropriate Under Rule 23.

In considering final approval of the Settlement, the Court considers whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. SouthTrust Bank of Al., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994). A settlement is fair, reasonable, and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation* (Third) § 30.42 (1995)). The court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e):

(1) the existence of fraud or collusion behind the settlement;
(2) the complexity, expense, and likely duration of the litigation;
(3) the stage of the proceedings and the amount of discovery completed;

(4) the probability of the plaintiffs' success on the merits;
(5) the range of possible recovery; and
(6) the opinions of class counsel, the class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6.

### a. There Was No Fraud or Collusion.

The Court readily concludes that there was no fraud or collusion behind this Settlement. *See, e.g., In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988) (record showed no evidence of collusion, but to the contrary showed "that the parties conducted discovery and negotiated the terms of settlement for an extended period of time"), *aff'd*, 893 F.2d 347 (11th Cir. 1989).   Here, the Agreement was negotiated at arm's length by experienced counsel who were fully informed of the facts and circumstances of this litigation and of the strengths and weaknesses of their respective positions.  The Agreement was reached after the parties had engaged in mediation and extensive settlement discussions and after the exchange of information, including information about the size and scope of the Settlement Class.   Counsel for the parties were therefore well-positioned to evaluate the benefits of the Settlement, considering the expense, risk, and uncertainty of protracted litigation.

### b. The Settlement Will Avert Years of Complex and Expensive Litigation.

This case involves complex claims and defenses.   Recovery by any means other than settlement would be time consuming for all the parties involved.  *See United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial.").   The Settlement Agreement provides immediate and substantial monetary benefits to the Settlement Class.   Particularly considering that the "demand

for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no doubt that the instant Settlement is adequate.

### c.  The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment.

The Court also considers "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995).  However, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.  The Settlement Agreement was reached only after the parties engaged in extensive formal discovery with Defendant and non-parties and the parties conducted a thorough analysis of Plaintiff's and the Class Members' claims.  Mot. at 8.  As a result, the parties were well-positioned to confidently evaluate the strengths and weaknesses of the claims and prospects for success at trial and on appeal. *Id.*

### d.  Plaintiff Would Have Faced Significant Obstacles to Obtaining Relief.

Another important factor the Court considers is "the likelihood and extent of any recovery from the defendants absent...settlement." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Ressler*, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise.").  As Class Counsel noted, this case presented significant risks both at the outset and throughout the litigation.  While Class Counsel was confident in Plaintiff's case, they were also mindful that Defendant had

advanced significant defenses, including defenses to class certification, that they would have been required to overcome in the absence of the Settlement.  *Id.*

Setting aside the risk involved, continued litigation would have involved substantial delay and expense.  Plaintiff would have been required to certify the class, face the prospect of interlocutory review of any Order granting class certification, summary judgment, a trial on the merits, and a post-judgment appeal.  The uncertainties and delays from this process would have been significant. Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement cannot be seen as anything except a fair compromise.  *See, e.g.*, *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" creating "great uncertainty as to the fact and amount of damage," making it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers...to the vagaries of a trial").

### e. The Benefits Provided by the Settlement Are Fair, Adequate, and Reasonable When Compared to the Range of Possible Recovery.

In determining whether the Settlement is fair in comparison to the potential range of recovery, the Court is guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate."  *Behrens*, 118 F.R.D. at 542.  The instant Settlement must be evaluated "in light of the attendant risks with litigation." *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 64 (S.D.N.Y.  2003); *see Bennett*, 737 F.2d at 986 ("[C]ompromise is the essence of settlement."); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[T]he very essence of a settlement is...a yielding of absolutes and an abandoning of highest hopes.") (internal quotation omitted).  Thus, courts regularly find settlements to be fair where "[p]laintiffs have not received the optimal relief."  *Warren,* 693 F. Supp. at 1059; *see, e.g.*, *Great Neck Capital Appreciation Investment P'ship, L.P. v.*

*PriceWaterHouseCoopers, LLP*, 212 F.R.D. 400, 409-410 (E.D. Wis. 2002) ("The mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement.").

Here, the Court finds the Settlement provides a fair and reasonable recovery to Settlement Class Members. Each Settlement Class Claimant who opts to participate in the settlement will receive $11.25. Agreement at 13, Section II(B)(1). While the recovery achieved through the Settlement does not achieve a full recovery, the Settlement Fund is an excellent result when considering Defendant's defenses, Defendant's financial condition due to challenges imposed upon Defendant's business by the global pandemic, as well as the challenging, unpredictable path of litigation that Plaintiff would otherwise have continued to face in the trial and appellate courts. *See Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) (approving settlement of $13.75 per class member); *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14-CV-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) (approving settlement of $2.95 per class member).

**f. The Opinions of Class Counsel, Class Representative, and Absent Settlement Class Members Strongly Favor Approval of the Settlement.**

"The reaction of the class [to the settlement] is an important factor." *Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (internal quotations and citations omitted). Here, there were no objections filed to the Settlement. This lack of opposition weighs strongly in favor of the Court's approval of the Agreement. *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (finding that a low percentage of objections "points to the reasonableness of a proposed settlement and supports its approval"). Moreover, the Court gives "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren,* 693 F. Supp. at 1060; *In re Domestic Air Transp.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge,

absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).  The parties believe that this Settlement is deserving of Final Approval, and the Court agrees.

### 3.  The Settlement Class

This Court previously found the requirements of Rule 23(a) and 23(b)(3) satisfied in this action as part of the preliminary approval of the settlement.  [ECF No. 50].  The Court finds that the prerequisites for a class action under Fed. R. Civ. P. 23 have been satisfied, for settlement purposes only, for Plaintiff and each Settlement Class Member in that: (a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of Plaintiff are typical of the claims of the Settlement Class she seeks to represent; (d) Plaintiff has and will continue to fairly and adequately represent the interests of the Settlement Class for purposes of entering into the Settlement Agreement; (e) the questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; (f) the Settlement Class is ascertainable; and (g) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy.

### 4.  The Application for a Service Award for the Class Representative is Denied

Class Counsel requested a Service Award of $5,000.00 for the Class Representative.  Mot. at 8.  As discussed at the Final Approval Hearing, and as agreed to by counsel for both parties, the Court will not approve the Service Award for the Plaintiff in light of recent binding circuit precedent.  *See generally Johnson v. NPAS Solutions, LLC*, No. 18-12344, 2020 WL 5553312 (11th Cir. Sept. 17, 2020).  The Eleventh Circuit recently held that "[a] plaintiff suing on behalf of a class can be reimbursed for attorneys' fees and expenses incurred in carrying on the litigation, but he cannot be paid a salary or be reimbursed for his personal expenses." *Id.* at *9.  In doing so,

the Eleventh Circuit interpreted a pair of Supreme Court cases from the 1880s to hold that "incentive" or "service" awards to lead plaintiffs in Rule 23 class actions are unlawful.  *See Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Trustees v. Greenough*, 105 U.S. 527 (1882).  Accordingly, in light of *Johnson*, the Court hereby denies approval of the Service Award sought in this matter pursuant to the Settlement Agreement.

### 5.  Class Counsel's Application for Attorneys' Fees is Granted

Class Counsel requests a fee equal to approximately 24.8% of the Settlement Fund created through their efforts in litigating this case and reaching the Settlement.  No Settlement Class Member has objected to Class Counsel's fee request.

The Court hereby approves Class Counsel's request for attorney fees, costs, and expenses, and awards Class Counsel a total of $710,000.00 as reasonable attorneys' fees and costs.  The Court finds that the requested fees are reasonable for the reasons set forth herein.  The award of attorneys' fees and costs to Class Counsel shall be paid from the Settlement Fund within the time period and manner set forth in the Settlement Agreement.

Accordingly, the Court hereby awards Class Counsel for their time incurred and expenses advanced.  The Court concludes that: (a) Class Counsel achieved a favorable result for the Class by obtaining Defendant's agreement to make significant funds available to Settlement Class Members, subject to submission of valid claims by eligible Settlement Class Members; (b) Class Counsel devoted substantial effort to pre- and post-filing investigation, legal analysis, and litigation; (c) Class Counsel prosecuted the Settlement Class's claims on a contingent fee basis, investing significant time and accumulating costs with no guarantee that they would receive compensation for their services or recover their expenses; (d) Class Counsel employed their knowledge of and experience with class action litigation in achieving a valuable settlement for the Settlement Class, in spite of Defendant's possible legal defenses and its experienced and capable

counsel; (e) Class Counsel have standard contingent fee agreements with Plaintiff, who has reviewed the Settlement Agreement and been informed of Class Counsel's fee request and has approved; and (f) the Class Notice informed Settlement Class Members of the amount and nature of Class Counsel's fee and cost request under the Settlement Agreement, Class Counsel filed and posted their Petition in time for Settlement Class Members to make a meaningful decision whether to object to the Class Counsel's fee request, and no Settlement Class Member(s) objected.

Additionally, the Court analyzes Class Counsel's fee request under *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). As set forth below, after considering the *Camden I* factors, the Court finds and concludes that the following applicable factors support the requested award of attorneys' fees and costs, and the Court concludes that Class Counsel's application for fees in the amount of $710,000.00, equal to approximately 24.8% of the $2,862,191.25 Settlement Fund, is well justified and is granted.

### a. Time and Labor Required, Preclusion from Other Employment and Time Limits Imposed.

The work required of Class Counsel was extensive. These efforts required work representing Plaintiff and the class without compensation. The substantial work necessitated by this case diverted Class Counsel from putting time and resources into other matters.

### b. Case Involved Difficult Issues; Risk of Nonpayment and Not Prevailing on the Claims Was High.

This case involved difficult substantive issues which presented a significant risk of nonpayment, including uncertainty on class certification, contested issues, including whether the software and equipment used to send the messages constituted an Automatic Telephone Dialing System in a setting of developing case law and FCC rulings, and recovery being dependent on a successful outcome, which was uncertain.

### c.   Class Counsel Achieved an Excellent Result for the Settlement Class.

Class Counsel achieved excellent monetary results for Settlement Class Members.  Here, the Settlement requires Defendant to make available up to $2,862,191.25 in cash for the benefit of the Settlement Class and will produce a per person cash benefit that is well within the range of recoveries established by other court-approved TCPA class action settlements.  *See, e.g.*, *Spillman v. RPM Pizza, LLC*, No. 10-CV-00349, 2013 WL 2286076 (M.D. La. May 23, 2013).

### d.   The Requested Fee is Consistent with Customary Fees Awarded in Similar Cases.

Many similar TCPA class settlements provide for one third of the fund.  *See Guarisma v. ADCAHB Medical Coverages, Inc.*, No. 13-CV-21016, [ECF No. 95] (S.D. Fla. June 24, 2015) (awarding one-third plus costs).  Common-fund attorney fee awards of one-third are "consistent with the trend in this Circuit."  *Reyes v. AT&T Mobility Servs., LLC*, No. 10-CV-20837, [ECF No. 196] at 6 (S.D. Fla. June 21, 2013).  Here, Class Counsel is awarded less than in those cases.  This outcome was made possible by Class Counsel's extensive experience in litigating class actions of similar size, scope, and complexity to the instant action.  Class Counsel regularly engage in complex litigation involving consumer issues and have been class counsel in numerous consumer class action cases.

### e.   This Case Required a High Level of Skill.

Class Counsel achieved a settlement that confers substantial monetary benefits to the Settlement Class despite the hard-fought litigation against a sophisticated and well-financed defendant represented by top-tier counsel.  *See In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1334.

### 6.   Final Approval of The Class Action Settlement

The Settlement Agreement is finally approved in all respects as fair, reasonable and adequate.  The terms and provisions of the Settlement Agreement, including all Exhibits thereto, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable,

and adequate as to, and in the best interests of, each of the parties and the Settlement Class Members.

### 7. Administration of The Settlement

The parties are hereby directed to implement the Settlement Agreement according to its terms and provisions. The Administrator is directed to provide Claim Settlement Payments to those Settlement Class Members who submit valid, timely, and complete Claims.

### 8. Release of Claims

Upon entry of this Final Approval Order, all members of the Class who did not validly and timely submit Requests for Exclusion in the manner provided in the Agreement shall, by operation of this Final Approval Order, have fully, finally and forever released, relinquished and discharged Defendant and the Released Parties from the Released Claims as set forth in the Settlement Agreement.

Furthermore, all members of the Class who did not validly and timely submit Requests for Exclusion in the manner provided in the Agreement are hereby permanently barred and enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in, conducting or continuing, either directly or in any other capacity, either individually or as a class, any action or proceeding in any court, agency, arbitration, tribunal or jurisdiction, asserting any claims released pursuant to the Settlement Agreement, or seeking an award of damages, fees or costs of any kind or nature whatsoever and pursuant to any authority or theory whatsoever, relating to or arising from the action or that could have been brought in the action and/or as a result of or in addition to those provided by the Settlement Agreement.

The terms of the Settlement Agreement and of this Final Approval Order, including all Exhibits thereto, shall be forever binding on, and shall have *res judicata* and preclusive effect in, all pending and future lawsuits maintained by Plaintiff and all other Settlement Class Members, or

those people that failed to validly and timely submit Requests for Exclusion, as well as their heirs, executors and administrators, successors, and assigns.

The Releases, which are set forth in the Settlement Agreement and which are also set forth below, are expressly incorporated herein in all respects and are effective as of the date of this Final Approval Order; and the Released Parties (as that term is defined below and in the Settlement Agreement) are forever released, relinquished, and discharged by the Releasing Persons (as that term is defined in the Settlement Agreement) from all Released Claims (as that term is defined in the Settlement Agreement). This release, and the terms set forth herein are intended to be construed as broadly as possible as permitted by law.

(a)     The Settlement Agreement and Releases do not affect the rights of Settlement Class Members who timely and properly submit a Request for Exclusion from the Settlement in accordance with the requirements of the Settlement Agreement.

(b)     The administration and consummation of the Settlement as embodied in the Settlement Agreement shall be under the authority of the Court. The Court shall retain jurisdiction to protect, preserve, and implement the Settlement Agreement, including, but not limited to, enforcement of the Releases. The Court expressly retains jurisdiction in order to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Settlement Agreement.

(c)     The Settlement Agreement shall be the exclusive remedy for any and all Settlement Class Members, except for the class member(s) who have requested exclusion (opted out), and the Released Parties shall not be subject to liability or expense for any of the Released Claims to any Settlement Class Member(s).

(d)     The Releases shall not preclude any action to enforce the terms of the Settlement Agreement. The Releases set forth herein and in the Settlement Agreement are not

intended to include the release of any rights or duties of the Settling Parties arising out of the Settlement Agreement, including the express warranties and covenants contained therein.

Plaintiff and all Settlement Class Members who did not timely exclude themselves from the Settlement Class are, from this day forward, hereby permanently barred and enjoined from directly or indirectly: (i) asserting any Released Claims in any action or proceeding; (ii) filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise), any lawsuit based on or relating to any the Released Claims or the facts and circumstances relating thereto; or (iii) organizing any Settlement Class Members into a separate class for purposes of pursuing as a purported class action any lawsuit (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) based on or relating to any of the Released Claims.

### 9. No Admission of Liability

Neither the Settlement Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred therein or attached thereto, nor this Final Approval Order or any Order of this Court related in any way to the Settlement, nor any of their terms and provisions, shall be:

(a) offered by any person or received against Defendant or any Released Party as evidence of, or construed as or deemed to be evidence of, any presumption, concession, or admission by Defendant of the truth of the facts alleged by any person, the validity of any claim that has been or could have been asserted in the action or in any other litigation or judicial or administrative proceeding, the deficiency of any defense that has been or could have been asserted in the action or in any litigation, or of any liability, negligence, fault, or wrongdoing by Defendant or any Released Party;

(b)     offered by any person or received against Defendant or any Released Party as evidence of a presumption, concession, or admission of any fault or violation of any law by Defendant or any Released Party; or

(c)     offered by any person or received against Defendant or any Released Party as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing in any civil, criminal, or administrative action or proceeding.

**10. Other Provisions of the Settlement Agreement**

This Final Approval Order and the Settlement Agreement (including the Exhibits thereto) may be filed in any action against or by any Released Party (as that term is defined herein and the Settlement Agreement) to support a defense of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

Without further order of the Court, the Settling Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement.

This action, including all individual claims and class claims presented herein, is hereby dismissed on the merits and with prejudice against Plaintiff and all other Settlement Class Members, without fees or costs to any party except as otherwise provided herein.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court: (1) grants Final Approval of the Settlement Agreement; (2) appoints Plaintiff Anita Jairam as class representative for this Settlement; (3) appoints as Class Counsel and Settlement Class Counsel Ignacio J. Hiraldo of IJH Law and Manuel S. Hiraldo of Hiraldo P.A; (4) awards Class Counsel attorneys' fees, litigation costs, and expenses of up to $710,000.00, which is approximately 24.8% of the Settlement Fund; (5) directs Settlement Class Counsel, Plaintiff, and Defendant to implement and consummate the Settlement Agreement

pursuant to its terms and conditions; (6) retains continuing jurisdiction over Plaintiff, the Settlement Class, and Defendant to implement, administer, consummate and enforce the Settlement Agreement and this Final Approval Order; and (7) will separately enter Final Judgment dismissing this action with prejudice.

      **DONE AND ORDERED** in Fort Lauderdale, Florida, this 1st day of October, 2020.

                                     **RODOLFO A. RUIZ II**
                                     **UNITED STATES DISTRICT JUDGE**

cc: Counsel of Record